Good morning. My name is Greg Beck. I represent the appellants in this case. The question here is whether a district court can prohibit a lawyer from sending a letter to his former clients regarding the merits of a class action settlement on the ground that the letter expresses the lawyer's point of view about that settlement. And that's the merits question. But before I get to it, I do want to address quickly, at least, the preliminary question about jurisdiction, because the case does remain pending. As of now, in the district court, in every circuit, what we know is that every circuit that has addressed the question has held that there is appellate jurisdiction over an order prohibiting communications with members of a class, even if the judgment is not final in the district court. And there are good reasons for that policy, because these cases involve important First Amendment interests. For example, if there were a reporter from the LA Times in the courtroom covering the case, and the judge observed the reporter taking notes and ordered the reporter not to publish any articles about the settlement process, then almost any reasonable person would think that there must be some way to get a remedy to that order, rather than waiting for months or years for the case to proceed through the settlement to final judgment or trial, if that's the rule. If there's anything, what would prevent your firm from simply sending a letter? If you go to the district court for approval, and you're rejected as class counsel, could you have sent the letter yourself to represent your former clients? I'm not sure if I understood the question. Who would send the letter, then? Yeah, I mean, your firm. Send the letter. What do you think about this settlement? Urge your former clients to reject the settlement. Could you have done that? Without going to the district court, you mean? Without bringing it to the district court. I think that nothing would have physically prevented them from doing that. But Rule 23 does give a role to the district court to play in regulating communications with the class. And in this case, Mr. Gentica. In this case, the court said work on it a little bit longer. Well, that's not exactly what the court said. Mr. Gentica, who was going to send the letter, was told by the counsel for the settling plaintiffs that they did not authorize sending the letter, and that they threatened sanctions if he were to do it. So it was reasonable for him to go to the district court for a resolution of that controversy to begin with. And then once he got to the court, it turned out to be a good thing that he did go there, because it became clear that the district court felt that there were very serious limits on the kinds of communications that he could give. And during the hearing, the court made very clear that there would be only one opportunity to draft a letter that would be sent to members of the class. One and only one opportunity. And the judge was very clear about this, that he would stay there as long as necessary. He would stay late if necessary to allow Mr. Gentica to draft whatever letter, whatever one letter, he wanted to send. But if the district judge rejected that letter, that would be it. That was the only chance. And so the order that the district court gave saying that Mr. Gentica did not have permission to send this letter, thereby established that he could not send any letter to the class. At the very least, it's clear he would have had to go back to the district court for permission to send anything else, I think. And so that would be the same situation that was in Gulf Oil, where the district court said, you may not send any communications to the class without first getting permission. If the district court's order ran afoul of either the rule or the Constitution, why isn't that redressable on appeal? On appeal after final judgment? The reason it's not redressable after appeal is because of the First Amendment interest involved. And this is what the Third Circuit said in reaction. That's an argument for reaching it sooner rather than later. But we do address First Amendment issues on appeal after final judgment. So we could certainly address it. Right, the court could address it and could give it an important measure of relief. I suppose the court could say that the approval of the settlement is thrown out and there has to be a new opt-out period. But that would not resolve all the time that it takes for the case to go all the way through final judgment, in which there is a restraint in place that prohibits sending the letter. And the law is very clear that speech delayed is speech denied. You know, I would be far more sympathetic with that point if it were a different kind of speech. But this is, in effect, normal kind of litigation, class action litigation stuff. And there is delay beyond belief in those cases anyway. So the fact that you can't send the letter today but may get to at the end of the day, what real chilling does that have? Well, the end of the day may be months or years down the line. Could be. And I think it can be for extremely egregious errors. But this isn't important. It may be, actually, I disagree with the assumption that this is sort of a typical class action kind of communication, because I don't think that's true. What happened here was that Mr. Jantika had previously communicated with his clients through a newsletter to say that he had brought this class action on their behalf. And he wanted to tell them that he had essentially been forced out of the lead plaintiff's role, and he did not agree with the fairness of the settlement that had been reached. And we have in the record excerpts the declaration that was filed in the district court from one of Mr. Jantika's clients, Nawali Nekere, who says that he was affirmatively misled by this situation. I understand that all that can come out at the end of the day. Well, nothing that can come out at the end of the day can allow him to recover the First Amendment ongoing violation that happened during all that time. And the Supreme Court has said that this is a serious restraint on expression, and this court has said that it's a prior restraint on speech. And that is a serious interest. And the way that the Supreme Court has instructed the courts to look at the question of collateral order review is to look at it as a class of cases. And I would suggest that the courts should look at this as a class of First Amendment communications cases, where district courts prohibit someone from communicating. And these class members, since the class has not been finally certified, are effectively third parties. They're peripheral to the litigation. And Mr. Genticca, who is forced into the role of an objector, is essentially an outsider as well. And so this could be any communication regarding the merits of the First Amendment. So you're basically saying that there's just an automatic right if the district judge disapproves any communication with members of the class? That's right. OK, so if the lawyer had drafted a letter which, in effect, said, you know, the district judge is a miserable SOB who made the stupidest ruling I can imagine, kicked me out, and I'm a brilliant lawyer, and I think he stinks and everything else about the ruling stinks. Right. So it doesn't make any difference. I don't think so. But keep in mind that there's a difference between a prior strain and a punishment after the fact. And it's an important difference. If the, if, I will, I do think that there are First Amendment rights to criticize a judge sometimes. I mean, those may be more limited when you're before the judge in an ongoing case. I don't know. But assuming that that does violate the law or a rule of some sort, then there would be an opportunity to discipline that lawyer. But that's different from saying that everything you say, I want to check it out ahead of time to make sure that you're not saying anything that might criticize me. That would be a much different and much more egregious case. And that's the kind of case that the Supreme Court was concerned about in Belfoyle. So I think the best way for the court to address the question of jurisdiction is to follow the path that was blazed by this court in the Perry versus Schwarzenegger case, which was an earlier iteration of the Proposition 8 case, which is to look at the collateral order doctrine with the important speech interests in mind. And if it turns out that it's a very difficult or close question, then the court can simply, because it's a First Amendment case, and these kinds of things are not going to come up very often, the court can then address it under the mandamus doctrine. And I do believe that in this case, the collateral order argument is a lot stronger than it was in Perry. The court in Perry actually ended up not addressing the question, because it made clear that the First Amendment interests were strong, and that there is a pretty strong argument for collateral order review. But it avoided answering the question. But that was a case involving discovery, which the Supreme Court has been especially skeptical about, as far as the availability of review on appeal, collateral order review. And this is really something very, very different. The Supreme Court itself, in Gulf Oil, in the last footnote in the case, I think footnote 12, distinguishes those kinds of trial management decisions where a judge may regulate what a witness says or a party says in the courtroom from Rule 23 kinds of communications, which involve interests that go far beyond those people who are actually in front of the court. And the interests involved in the absent class members are in having the availability of advice from independent counsel, so that they can make an educated decision about whether to opt out of the case or object to the case. But if the court does decide that it's a close question on collateral order, then I do think that mandamus is an appropriate way for the court to address the case. And that's what the court did in Perry. And in a later case in 2010, in re-anonymous online speakers, which followed Perry in that regard, ultimately denying mandamus, but finding it didn't need to address collateral order review because of the availability of mandamus relief. But I do want to turn to the merits. The argument that the settling parties are making is that the statement is misleading. It's not, and we explain why in our reply brief. But the court doesn't even need to get there, because the problem with the argument is that the district court simply never made a finding that there's anything misleading about the letter. And the Supreme Court in Gulf Oil said there has to be a finding, and there has to be narrow tailoring. That just didn't happen here. If we reverse it, what would you want us to order the district court to do? Well, the court could do what the Third Circuit ordered the district court to do in the Enrique Community Bank case, which was to go back, take a look at the letter, make findings as to what's misleading, if anything. And if there was something misleading, then the court could narrowly tailor a remedy to correct that. And the way that the court would do that is if there is anything misleading, the court would order Mr. Gentica to explain it or change it so that it's not misleading anymore. In this case, Mr. Gentica offered, and this is reflected in the transcript for the hearing, Mr. Gentica offered to allow the settling parties to include their own counterstatement in the letter. And that would have given them an opportunity to explain anything that they thought was misleading, but that wasn't enough. So I think it's clear that there would have been no clarification that would have satisfied the district court. So I think the district court has to consider those kinds of alternatives. And it's also clear that the district court didn't think this was misleading because the district court allowed the letter to be sent to Mr. Gentica's current clients. And the court would never have done that if it thought that the communication would mislead, if it was affirmatively misleading as to those people. I'd like to reserve the balance of my time. Of course. Rossman. Good morning, Your Honors. My name is Stuart Rossman. I'm the Director of Litigation at the National Consumer Law Center in Boston. And I'm here representing the appellees in this particular action. That includes both the settling plaintiffs, and I represented with my co-counsel the settling plaintiffs in the action below in the trial court, as well as the defendants in this case. Before proceeding with my discussion of the merits of the case, I do want to address the jurisdictional issue first and foremost. Simply put, this case is just not right for appeal. Not only has no final judgment been entered in this particular action, but in fact, the court hasn't even given final approval to the tentative proposed settlement that was reached in the case. Therefore, the case is still ongoing. It makes no sense, I believe, to handle the matter at this particular time, first and foremost, because there is no irreparable harm in waiting until the final appeal. The provisions of the settlement agreement expressly provide, there can be no distribution of the funds from the settlement until all appeals have been exhausted. So there's no irreparable harm of waiting for that process to move through. On the other side of the balance, if, in fact, the court finds that this is, in fact, a collateral order that can be appealed on an interlocutory basis, in essence, it means that every time a judge rules under Rule 23D, as to the form of notice, that any party that opposed the form of that notice could, in effect, bypass the provisions of Rule 23F and claim that they had a First Amendment right to argue the case immediately before the court. And I don't think that was ever intended to be the set of circumstances. I do point out, just as a curiosity, but it is seemingly rather interesting to me, that the two cases that the appellants rely on most for their position in this case, which is the Gulf Oil case in the Supreme Court and the Community Bank of Northern Virginia case that came out of the Third Circuit, both were decided after final judgment was entered in the case. The cases that were cited, too, by Mr. Beck, claiming that they were entitled to an interlocutory appeal are all extremely different from this case. In each of those cases, the opposing party actually requested from the court an order literally preventing another party from communicating. That simply wasn't the case here at all. No one has ever sought to have a restriction on the speech by Mr. Gentica. This entire matter was precipitated because Mr. Gentica approached the court and asked for what, in essence, was an advisory opinion to bless the communications he wanted to have with his former client, which is rather curious to us as well, since he had been fully capable for a previous period of time to communicate with his former clients. He'd been sending them newsletters not only about the litigation, but about the settlement without any objection by the settling plaintiffs or by the defendants, and without any restriction being imposed upon him by the court. It was only when Mr. Gentica precipitated the matter by coming to the court in order to seek some kind of imprimatur for the communication that he wanted to have that this matter was particularly triggered. For all those reasons, we don't believe that this case. Help me out a minute on the facts, if you would, please. Mr. Rosten, your co-counsel here, Mr. Speck, says, well, they really didn't get a fair chance to work with the judge on the communication. They were under pressure. Stay there all night. You better get it done or you're not getting anything out or whatever. What's your response to that? My response is that they were always free to send any communication. First of all, let me just make a very important distinction. It had never been a contested issue that Mr. Gentica had the unfettered right to have full communications with his current clients. We had made that clear during the argument. The judge noted it in his opinion. And in fact, in the amended order, he expressly provides that Mr. Gentica has unfettered right to speak to his current clients. So we're only talking about the issue with his former clients. He had been communicating with his former clients without any court imprimatur or approval. It was only when he decided to send this particular letter that he approached the court and asked for the court's approval. Now, as far as I'm aware, in the years that I've been practicing, judges do not normally give advisory opinions. There are many cases where I would have liked that to have happened for me, but I didn't have that luxury. So there had to be some basis upon which the judge was being presented with this particular request. And the only way that I can see that he had the authority to do it, and I believe the judge's order reflects it, is that he was being asked under Rule 23D in order to manage this litigation. So the only pressure that was here was created by Mr. Gentica. He created the confusion by communicating with his clients. At some point in time, he decided he wanted the court's approval. So he approached the court under Rule 23D in order to get that permission. The court spent an entire day, beginning at 9 o'clock in the morning, going until after 5 o'clock, trying to work with Mr. Gentica to come up with a notice, which I don't believe he was required to send whatsoever, but was at least trying to accommodate him to fulfill the mandate that I believe that this circuit requires, that when you send a second notice that you balance the concerns and the interests. And he worked on doing that. And at the end of the day, if Mr. Gentica's concern was to inform his clients that there had been a settlement and that he was opposing the settlement, the court offered him the opportunity to be able to do that within the context of a letter that he would approve. Mr. Gentica basically said he would not accept that. And the judge said, well, if it's a take it or leave it, then you don't get that particular letter. All we're looking at here is this one particular letter. And the judge worked with Mr. Gentica and wanted to be able to come up with something that fulfilled his requirement to have a balanced, neutral, secondary notice that was going to be sent out. I should also point out, by the way, that this is, in fact, a second notice. The original notice had gone out over six months before these arguments were taking place. And Mr. Gentica, as a counsel in the case, had full opportunity at the original time that the original notice was discussed to participate in that particular process. It was only afterwards when he came back and wanted to send notice not to the entire class, but 20,000 members potentially. And quite honestly, not only 20,000 of his former clients were, in fact, members of the class, which causes confusion in and of itself. That was the only time that it came about. So he was under no pressure other than the pressure he created for himself. I think that the appellants in this case have tried to structure this as being a First Amendment case. And it is nothing of the sort. There was no prior restraint on speech. There was no injunction. There was no gag order. Rather, what we have here is a case of a trial court judge exercising his authority under Rule 23, consistent with the mandate of the Ninth Circuit, that he would not be willing to endorse the precise contents of a competing class notice that was being presented by an objecting class counsel. If Mr. Dantica were to go ahead and issue the letter that he asked the district court to bless, would he stand in contempt of court at this point? I don't know that he would be in contempt of court. The motion, the way it was phrased, was that he asked the court permission to send that letter. The court did not give that permission. There's no affirmative order saying that you can't do it. But I think it's a practical matter. Would you run into the district court and object if he sent that letter? I can't say the situation had occurred. But I think that it would be tantamount. I think that this particular letter probably would not have been able to go out. I think the key here is that he wanted the courts in premature on this notice. And if he misrepresented that the court had approved the notice, then we certainly would have come running into the court. Well, let's suppose he's not misrepresenting. Let's suppose he sends the essence of the letter without representing that the district court has blessed this in any way. What grounds do you have, then, for objecting? First of all, it's speculative as if we would actually have objected. It is the court reviewed the terms of this particular language and rejected it, saying that it was not neutral. And therefore, it would not endorse that as an official. Right, but if he's not misrepresenting the court's endorsement, then? Then I think that just as he had been communicating with before, consistent with the requirements of the Code of Professional Responsibility, of course, and those restrictions, I don't think there would have been a basis for us to be able to go forward. Would there be a basis going forward if you were to issue the letter tomorrow? The way he had written it and made it perfectly clear that the court had not endorsed it as part of his newsletter, once again, I don't know that I would have had any right to have been able to do it. Would you have any right tomorrow to do it if he issued the letter tomorrow? You keep talking about the past tense. No, no, I'm sorry. No, I meant to say on a going forward as well. Once again, if in fact he did not represent the court and made it clear that he had requested the court's permission and the court had rejected it, I think that sending the letter out and creating the illusion that the court had approved it, that this was an official notice, would have been problematic. If he wrote in the letter saying I asked the court for permission, the court said that this was not neutral. Therefore, I don't have the court's approval, but I'm sending it out anyhow. I don't know that tomorrow that I would have any more right to go running into Judge Carter's courtroom and ask for any kind of relief. He asked the court to endorse this letter. The court said I will not endorse this letter because it's not neutral. I would disagree with my brother's contention that he did not make specific findings. To the contrary, he made very specific findings. He found that the letter was unbalanced. He said it was negative. He said it was critical. He said it was biased. Those are all misleading. The idea of giving class notice is to give the class members an opportunity to make an informed decision as to whether to opt in or to opt out of the settlement. It's not an opportunity for opposing parties to argue the merits of the settlement. And that's as far as the official notices. If Mr. Chantika's clients called him in response to the letter that the court would have been willing to approve. It said there has been a settlement. I do not approve of it. If you want to discuss it, call me. And they called him up and he said all the things that he said in the letter and explained why he didn't want to support it. We would have absolutely no objection to that. That is his right to be able to do it consistent with his responsibilities under the Code of Professional Responsibility. The difference here is that he wanted to argue his case. We certainly couldn't argue our case when we got the original approval of the notice six months earlier because the court was obligated under the circuit's laws to make sure that the notice was neutral and does not provide argument for one side or the other because it's an inappropriate place. It renders the notice totally non-understandable by the layperson if you've got two lawyers arguing back and forth as to the merits of the settlement. But the court certainly found that, as I said, that it was unbalanced. It was negative. It was critical. It was biased. And as we pointed out in our brief, there were very good reasons for that. There were no disclosures of the fact that there had been objections to the settlement that had been considered and rejected by the court. There had been no disclosure in Mr. Gentiga's letter that there had been a tentative ruling denying our motion for class certification prior to the settlement. It misstates that 90% of the class members will be forced to release their claims in exchange for nothing, whereas every class member had an opportunity to participate in the settlement.  It misstates that the member of the class, the 20,000 former clients that Mr. Gentiga had, were not all members of the class. It misstates that the class members would be required to know or have seen their credit reports in order to be able to participate in the settlement. That is not, in fact, true. And it does not disclose, and this to me is most telling, that Mr. Gentiga's counsel had acknowledged in court on the record that individual actions for opt-out class members were impractical. And that didn't show up there either. And as a result, it rendered all sorts of problems for the court, and I believe was quite problematic. I just wanted to close up on my statement. I wanted to refer the court to two parts of the record, because I think it's rather telling. In the motion for the order authorizing the counsel to contact members that had brought by Mr. Gentiga, there's the following line. Gentiga and the white plaintiffs are confident that under prevailing appellate peace law, Mr. Gentiga has the unfettered right to contact present and former clients who advise them as to the merits of the settlement. Out of abundance of caution, however, they seek express court approval for such communication. So it's their choice that they went to speak to Mr. to the court. And then Mr. Gentiga in his declaration to the court in italics, the only part of italics in his declaration, says, I desire to inform or advise Mr. Macari, his former client, at an earlier date, but I was compelled to wait to receive guidance from the court about the propriety of my contact with my own clients. I would defy my brother counsel to show anywhere in the record that he was compelled to receive that guidance. That was his choice. He had fully been free to communicate with those people for over two years before that particular time. And he finishes up by saying, I'm very concerned that if my former clients do not receive any communication from me after having received previous letters informing them of this class action, letters that Mr. Gentiga had also sent to them, they will mistakenly assume that I would advise them to support this settlement. So it appears that Mr. Gentiga is concerned that his clients, former clients would be confused that he was, in fact, supporting this settlement. And I just want to conclude by reading what the judge said in his amended order specifically on that point. At oral argument, the settling plaintiffs and the defendants offered to stipulate to Gentiga contacting his former clients in a more neutral tone, alerting them that he now represents plaintiffs objecting to the settlement and giving them his contact information should they desire to contact him for advice on whether they should opt in or opt out of the settlement. The court would have approved this communication, allowing Gentiga to contact his former clients to make sure that they know they may contact him for advice on the merits of opting in or out of the settlement, and even to tell him that he now represents people opposing the settlement, but not allowing him to present his views of the unfairness of the settlement to his former clients, who have not actively solicited his advice on the matter, strikes a balance, the balance that this court requires, between the need to preserve the neutrality of the notice period and not unduly restricting communication. However, the white plaintiffs stated that they would not accept any letter other than the one that they submitted. They state that, in minimum, they do not desire to send a letter that did not articulate the reasons why Gentiga opposed the settlement, the very argument that this court says should not appear in a court-approved notice. And Gentiga has thus presented the court with an all or nothing proposition, saying he prefers to send nothing rather than a more neutral notice. Mr. Gentiga asked the district court judge for advice, for guidance. He got an answer he didn't like, and instead he decided to take his toys and go home. And to this date, a year and a half later, when he was so concerned about the concern about his clients, no such notice has gone out to his clients when it was right there for him to be able to accept. I don't believe that that is an abuse of discretion by the trial court judge. Rather, I believe that's an exercise of prudent, fair, and unbiased decision-making under Rule 23, and that he was authorized to rule exactly as he ruled. If there are no other questions, thank you very much. Thank you. Mr. Beck. Thank you, Your Honor. The balance that the district court struck was that Mr. Gentiga could send a letter as long as it did not express his opinion about the settlement. And our central contention is that prohibiting a lawyer from expressing an opinion when it's clearly labeled as such, and giving class members an opportunity to make their own decision about whether they agree with that opinion or not, is not a legitimate basis at all for restricting communications with clients. Okay, but now Mr. Rossman's put forth a little different proposition. He says that your client wasn't barred from communicating with either his clients or his former clients, but what he could not do was represent that the letter that he was sending had been approved by the district court. I completely agree he could not represent that the letter was approved by the district court. He never proposed that it would be identified as such. The letter is in the record. Why doesn't he just send the letter? Mr. Rossman has said he doesn't have any basis for objecting if your client sends the letter. He said as long as the letter is consistent with the ethical rules, he wouldn't have a basis to object. Well, it seems like that's a fairly regular constraint. Well, his contention has been all along that it's unethical to contact these class members because they're represented by plaintiff's counsel. That was vigorously argued in their opposition. That's a different argument. That question is in front of us, and we don't have any basis for deciding the question of the application of the rules of professional responsibility. I agree, and I'm not asking you to. And actually, I think it doesn't matter why he went to the district court to ask. I don't think that's relevant at all. The fact is the district court said that he may not send this letter to his former clients. That's an order preventing him from doing that, and that's all that the court needs to look at. It may be true that Mr. Gentica could say something else. He may be free to say something else. So is it your position that if Mr. Gentica sends this letter tomorrow, that the district court will hold him in contempt? I think the district court very well could, and I don't think that this court would want to encourage the lawyers to disregard an order the district court says. You may not send it to your former clients. That's what it means. The Kleinman case in the 11th Circuit in 1985 is an example of what happens when you disregard that kind of thing. The court in that case, it was very clear from context that the court was limiting discovery to only a few depositions because it was concerned about the kind of influence the defendant would exert on the class members. The defendant, when the judge went out of town, went ahead and called all the class members and tried to talk them into opting out. When the judge came back, the judge said, well, it's true. The defendant argued, well, the order actually only said that we may only conduct limited discovery. It didn't say anything about calling all the class members. So I think that it's clear from the context, if the court reads the record, the hearing in the district court on the motion, that the district court was saying, you have one chance to send a letter. If you don't do it, you can't send anything. That's the context. I think if Mr. Chantico sent this particular letter, there would be no question that that could be subject to contempt. One question. I know your time is up, but in the Gulf case, in Mr. Rossman, the communication must be based, the limitation on the communication must be based on a clear record and specific findings that reflect a weighing of the need for such a limitation and the potential interference with the rights of the parties. All right. He says, boy, we got it in that case, unbalanced, and he goes through a list of things. What's your position in that regard? I think I know it, but can you articulate that for me a little bit better? Whether those findings have been made? Yes, right. He said that it was unbalanced, it was misleading. It's a former class, you know, all of these things that were mentioned by Mr. Rossman that I didn't write down, but he could probably list them. But there he is. He says, the judge did that under Gulf. You're saying, send it back, because he got to apply then, at least we're entitled to a hearing under Gulf. He says, you've already had it. Yeah. What's your response? My response is, first of all, the court doesn't even need to worry about that, because if there is something misleading, then the correct remedy is to simply require clarification or changing that thing, not to prohibit the whole letter. So that's the easy way out of it. But the judge says, your client says, it's this letter, Your Honor. This is it. Yeah. He was forced to say, this is it. He had no choice but to say, this is the letter we want to send. The judge was very clear he had to do that. He would be happy to just- Didn't the judge say that your client said, it's this or nothing? No. Our client did not say it's this or nothing. Our client was working with the other side all day and with the judge to come up with changes. And our client even said, they can put in their own counter notice right in there with it, if we want. He was struggling. But the one thing he would not compromise on was that he wanted to say his opinion about that he didn't think the settlement was fair, because he thought he owed that much to his former clients. He'll say anything else that will clarify that that's not the official position of the court. And he says in the letter, the draft already, you should refer to the official notice. He says that the opposing parties disagree with this. They think it's too risky to bring a separate case. But I think that the settlement is unfair. And this is my opinion. The first sentence is, this is my opinion. And so if there's something else that needs to be said to make it even more clear, then he's willing to do that. But what he doesn't want to do is not tell his former clients that he thinks the settlement is unfair in some way. He wants to have some way of doing that. And that's what the district court wouldn't allow. Thank you. Thank you. The case is adjourned today, counsel. The matter to start here will be submitted. The court will stand in recess. All rise.
judges: Quist, Rymer, Bybee